MARY E. KING v. JUNIOR K. KING, Appellant.

In Banc, March 27, 1900.

1. **Widow's Quarantine:** RESIDENCE. To entitle a widow to quarantine in the mansion house and plantation of her deceased husband, it is not necessary that she should actually reside in such mansion house at the time of his death. If the husband dies in possession, the widow's right of quarantine attaches, whether she is then residing in the mansion house or elsewhere.

2. ———: ———: EVIDENCE. For the reason that the possession of the husband and not the residence of the wife determines her right to occupy the mansion house and plantation after his death, it follows that there was no error in the exclusion of testimony offered for the purpose of showing that after separating from her husband the wife established her residence in another State.

3. **Mansion House:** ABANDONMENT OF: INSTRUCTIONS. Upon the issue whether the husband at the time of his death was in possession of the mansion house, or had previously abandoned it and acquired another domicile, *held*, that a series of instructions given by the trial court were substantially correct.

4. **Appellate Practice:** ERRONEOUS INSTRUCTIONS: VERDICT FOR RIGHT PARTY. *Held*, further, that even if the instructions complained of in this case were erroneous, there could be no reversal on that ground, for the reason that the evidence would not sustain any other finding than that made by the jury.

Appeal from Saline Circuit Court.—*Hon. Richard Field,*
Judge.

AFFIRMED.

*D. D. Duggins* and *Leslie Orear* for appellant.

(1)    The court erred in refusing to permit the defendant
to show by his evidence that plaintiff took her children to Mar-
shall, after leaving her husband, and remained there until after
the decision of the divorce suit pending between her and her
husband, that she then went with her whole family to Deer
Lodge, Montana, and established a residence there and that she
rented a residence property and furnished the same and lived
in it as a family.    Spiers' Appeal, 25 Pa. St. 233; Estate of
Coates, 12 Phila. 171; Nye's Appeal, 126 Pa. St. 341;
Ordiornes Appeal, 54 Pa. St. 175; Estate of Noah, 73 Cal.
583; Thompson on Homestead, 914.    (2)    The court erred
in permitting witness Hurlburt to testify over the objections
of defendant, as to the deductions and impressions made upon
his mind, from statements made to him in St. Louis by Will
R. King.    Derby v. Salem, 30 Vt. 722; Moorhouse v. Lord,
10 H. L. Cas. 290.    (3)    There was no substantial evidence
on the trial upon which the verdict can be supported.    The
evidence shows that Will R. King, at the time of his death,
did not reside on the premises sued for and was not occupying
the same as a home.    McClurg v. Turner, 74 Mo. 45; Mc-
Cartney v. Finnell, 106 Mo. 445.    (4)    The court erred in
giving instruction numbered two for the plaintiff.    The in-
struction does not embody a correct theory of the law.    It, in
effect, tells the jury that if Will R. King at the time the lease
to defendant, Junior K. King, intended to be absent only tem-
porarily and intended at the time to return to Peabody farm as
his home, he had not abandoned said homestead and di-
rects the jury upon the finding of that fact alone to find a

verdict for plaintiff. It singles out the fact, tells the jury that unless the intention to abandon Peabody as a homestead was then and there formed, that even though he did after making said lease and after going to Excelsior Springs make up his mind to change his residence to California, and did after that go there and take up his residence and determine upon that place as his permanent place of abode, that all of such facts were to be held for naught and could not have the effect of changing his domicile, but that it was unalterably fixed at Peabody. The instruction is in direct conflict with those given for defendant, and as it in terms covers the whole case, doubtless controlled the verdict of the jury. The second instruction given for plaintiff when read in connection with the third instruction given for the defendant confines the jury to the fact that the *animus non revertendi* must have been formed at the very time of leaving Peabody farm and making the lease. This is clearly an erroneous view of the law. The intention to abandon the farm, as a home or place of residence, may legally have been formed at any time before going to California, or even after he went there and if so formed the abandonment of his former domicile was complete. The third instruction given for defendant properly declared the law as it stood, without the restrictions put upon it in the plaintiff's instructions complained of. The giving of this instruction was error, and the verdict of the jury, under these conflicting instructions, could be nothing more than a mere guess. Jacob's Law of Domicile, secs. 178, 179; McCartney v. Finnel, 106 Mo. 445; Spohn v. Railroad, 87 Mo. 74. (5) It was error for the court to give the third instruction given for plaintiff. This instruction read in connection with the 4th and 5th instructions given for defendant practically destroys the effect to be given to those instructions; it is in conflict with them and could have but one effect, viz.: to confuse the jury and mislead them and furnished the plaintiff with the argument that Mr. King being entitled to the possession of the land at

the expiration of his lease to defendant that therefore it was the place of residence of said King at the time of his death for the possession of which as successor to his right of action, his widow could sue.    Price v. Breckenridge, 92 Mo. 378; Company v. Conlon, 92 Mo. 221; Clark v. Kitchen, 52 Mo. 316; Donahoe v. Railroad, 83 Mo. 560; Greer v. Parker, 85 Mo. 107.    The instruction was irrelevant, King still had the right to rent the land again; it couldn't be said that the right influenced his purpose as to residence.    Quinlivan v. English, 44 Mo. 46; Kauffman v. Harrington, 23 Mo. App. 572.    (6) The fourth instruction given for plaintiff is contradictory in its terms and is clearly not the law.    This instruction by itself is fatally erroneous and can not be upheld upon any theory of the law.    It in effect tells the jury that even if Mr. King went to California for the purpose of establishing a domicile there for the purpose of bringing a divorce suit against his wife and yet intended to return to Peabody farm to live upon the same as his home, the said King had not abandoned said Peabody as a homestead, and upon the finding of these facts alone directed a verdict for plaintiff.    It could not be reconciled with the instructions for defendant which properly declared the law; to give this instruction is to practically destroy the effect of those given for defendant and it can not be made to harmonize with the laws applicable to domicile and homestead.    Henschen v. O'Bannon, 56 Mo. 289; Stephenson v. Hancock, 72 Mo. 612; Stone v. Hunt, 94 Mo. 475.    It is error to give contradictory instructions, or such as are repugnant.    Schneer v. Lamp, 17 Mo. 142; Evers v. Shumaker, 58 App. 454; Frank v. Railroad, Ib. 181.    (7)    It was error for the court to give the 6th instruction asked for by plaintiff. It was not only misleading and confusing but it invades the province of the jury to pass upon the probative force of the evidence of C. Bent Carr.    It eliminates from the evidence to be considered by the jury all of the evidence of C. Bent Carr tending to show that Mr. King intended to buy a home

in St. Louis and not to return to Saline county.   McClurg v. Turner, *supra*.   (8)  The first instruction given for plain-' tiff is erroneous and contains the same vice that is contained in the second instruction for plaintiff in this; that it tells the jury that the *animus revertendi* if formed at the date of the lease mentioned, or absenting himself from said place, irrevocably fixes such place as his residence; disregarding the fact that after making such lease and going to a new residence the *animus manendi* may grow up and thus transmute the new residence into a domicile.   It is error to give an instruction upon a theory contrary to the evidence before the jury where there is no evidence tending to show an intention to return. McClurg v. Turner, *supra*; Jacobs on Domicile, secs. 178, 179; Spohn v. Railroad, 87 Mo. 74.   (9)  The instruc- tions given for plaintiff are irreconcilable and inconsist- ent with those given for defendant and while those given for defendant correctly state the law the giving of these contradic- tory instructions is reversible error as it can not be told which the jury took for their guide.   State v. Herrell, 97 Mo. 105; State v. Cable, 117 Mo. 381; Bluedorn v. Railroad, 108 Mo. 449; Semmons v. Carrier, 60 Mo. 583; Boynton v. Miller, 63 Mo. 207; Jones v. Railroad, 107 Mo. 480.

*McDougal & Sebree* and *W. M. Williams* for respondent.

(1)  The plaintiff is entitled to the premises sued for until her dower shall be assigned her.   R. S. 1889, sec. 4533.   This statute being to afford support and shelter to the widow and or- phan "should receive a liberal construction—one commensu- rate with the objects intended and in harmony with the ends to be attained."   Gentry v. Gentry, 122 Mo. 202.   And the fact that the husband and wife were living separate at the time of his death does not destroy her right.   Brown v. Brown, 68 Mo. 388; Whitehead v. Tapp, 69 Mo. 415; Stokes v. Mc- Allister, 2 Mo. 163; Mowser v. Mowser, 87 Mo. 437; King v. King, 64 Mo. App. 301.   (2)  The widow is entitled to the

exclusive possession and all the rents of the home place until her dower shall be assigned. Gentry v. Gentry, 122 Mo. 202; Roberts v. Nelson, 86 Mo. 21. And she may maintain ejectment. Gentry v. Gentry, *supra*; Brown v. Moore, 74 Mo. 633. And if part of the premises are rented out at the time of the death of the husband, the widow is entitled to such part of the premises after the term expires. Orrick v. Robins, 34 Mo. 226; Gentry v. Gentry, *supra*. (3) The fact that the homestead is rented out does not destroy the right of homestead unless the owner intends to change his domicile. Brown v. Brown, 68 Mo. 388; Mills v. Mills, 141 Mo. 195; Duffey v. Willis, 99 Mo. 132; Potts v. Davenport, 79 Ill. 456; Stewart v. Brand, 23 Ia. 477; Fyffe v. Beers, 18 Ia. 4. (4) The fact that the husband was not actually occupying the place at the time of his death does not preclude the widow of her right of quarantine. Occupancy within the meaning of the law means that the premises should be the home of the husband at the time of his death. Holmes v. Kring, 93 Mo. 452; Mills v. Mills, 141 Mo. 195; Potts v. Davenport, 79 Ill. 455. (5) "Every person must have a domicile somewhere which he retains until he acquires another." 5 Am. and Eng. Ency. of Law, 859; 1 Am. Law Reg. (U. S.) 711; Mitchell v. U. S., 21 Wall. 350. (6) "Two things must concur to effectuate a change of domicile: 1. An actual change or removal of residence. 2. An intention to make such change permanent." Doyle v. Clark, 9 Cent. Law Jour. 5; 5 Am. and Eng. Ency. of Law, 865; Marks v. Marks, 75 Fed. Rep. 321; Dicey on Domicile, 77; Jacobs on Domicile, sec. 150; State ex rel. v. Smith, 64 Mo. App. 313. (7) "The burden of proof unquestionably lies on the party who asserts the change." 5 Am. and Eng. Ency. of Law, 865; Jacobs on Domicile, sec. 151. (8) The question of abandonment is one of fact and intention. Tayon v. Ladew, 33 Mo. 208. "Abandonment includes both the intention to abandon and the external act by which the intention is carried into

effect." Hickman v. Link, 116 Mo. 127. "It is said that domicile is residence combined with intention. It has been well defined to be residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time." State ex rel. v. Smith, *supra.* (9) An intention to abandon did not prevent King from resuming his homestead at Peabody before intervening rights attached. Shepherd v. Cassidy, 20 Tex. 24; Gouhenant v. Cockrell, Ib. 96; Davis v. Andrews, 30 Vt. 678.

BURGESS, J.—This is an action of ejectment by plaintiff who is the widow of Will R. King, deceased, against Junior K. King, his son, to recover the possession of a large tract of land in Saline county.

Plaintiff claims possession of the land upon the ground that the mansion house of her husband at the time of his death was situated thereon, and that the land in question belonged thereto. [Section 4533, Revised Statutes 1889.]

On March 8, 1894, Will R. King died, leaving surviving him the plaintiff, his widow, and several children, two of whom, including the defendant, were the fruits of a former marriage. At that time he was the owner of a large body of land, of which that involved in this litigation is a part, and upon which is claimed by plaintiff to have been situated his mansion house.

Will R. King had owned this land for many years, and had builded upon it an elegant residence, with modern improvements, and moved into it with his family where they continued to live for many years thereafter, and until the fall of 1889, when because of some disagreement between him and his wife, the plaintiff, she left him and the place, taking with her several of the younger children, going first to Marshall, and finally to Montana. They never lived together afterwards. King named the place "Peabody."

At the time of the separation William King, the brother

of defendant and son of Will R. King by his first marriage, was living at Lee's Summit, and June, the defendant, was residing in one of the houses on his father's plantation. The father immediately had William move back home. June moved in the mansion house, and William moved into the house which June had vacated.

In January, 1890, King made a written lease to each of his sons, for four years, beginning March 1, 1890, to William a tract of land on the plantation, but not here in controversy, and to June several hundred acres of the land in controversy, including the mansion house and barns. In the same year these leases were made King took back all the land he had leased to William, except 106 acres, and all he had leased to June, except the 240 acres upon which was located the mansion house and barns. In the lease to William there was a small rental reserved, but in the lease to June there was no rent at all, except an agreement to keep up the ponds and tanks and repairs on fences and pay the taxes, the last of which the defendant did not do, but his father always paid them.

There were a number of other circumstances shown in evidence by plaintiff which tended to show that her husband had never abandoned the "Peabody" place as his homestead, such as keeping a room, desk and books there, and returning thereto; the continued management of the farm, clearing up of the timbered land, repairing the mansion house, and while the latter was being done, in speaking to a friend about his wife, he remarked that "the home was always ready for her when she wanted to return." It was also shown that in the summer of 1893 he made his assessment list to the assessor of Saline county, of his personal and real property for taxation in which he described himself as of that county. That he made similar assessments in 1888, 1889 and 1891, and kept his bank account at Marshall in that county.

Upon the part of the defendant there was evidence tending to show that Will R. King had abandoned the "Peabody"

place as his homestead, after his wife left him.    That there-after he sold his household goods and furniture, divided his farming utensils and live stock between his two sons by his first marriage, did not engage in farming any more, left the place for a time, and stated to one of his friends, Mr. Cordell, that he had made up his mind to leave "Peabody" and never expected to live there again.    That he leased the land in controversy to the defendant for a term of four years, who occupied under the lease for that time.    That he then went to Ming's Hotel, in Marshall, then to Excelsior Springs and thereafter in the spring of 1893 to Fresno, California, as he frequently stated, for the purpose of making that State his home, and frequently wrote and spoke of it as such.    That upon his arrival there he took a room at a hotel where he re-mained some days, and then went to the residence of a friend, where he remained some weeks, then returnd to this State and being in bad health on the advice of a physician stopped at Excelsior Springs for a few days, and returned to Peabody in July or August of the same year.

He then remained at Peabody until the latter part of October of the same year and then went to St. Louis for med-ical treatment, and remained there until his death.

Over the objection and exception of defendant the court at the instance of plaintiff instructed the jury as follows:

"1.    The jury are instructed that the widow of a deceased person is entitled to the possession of the mansion house and plantation used in connection therewith of her deceased hus-band, from the time of his death until her dower shall be assigned her, and the fact that said widow may have lived separate and apart from her said husband before and at the time of his death, can not defeat her of her rights to the pos-session of the said premises.

"And the jury are further instructed that the mansion house of a person is his chief place of residence, and the resi-dence of a person when once established remains until it is

abandoned, and in order to constitute abandonment, it is not enough that he should at times absent himself from it, or lease it out, if he intends at the time he so absents himself or makes such lease, to return to such homestead and make it his home, and that his absence shall be temporary.

"And if the jury shall believe from the evidence that in the fall of 1889, the deceased, Will R. King, lived upon the place known as "Peabody" with his family and that said place was his home, then the chief house on said premises was the mansion house of said Will R. King. And even though you should believe from the evidence that there was a separation of said King and his wife, and that his wife and younger children did not remain at "Peabody," and that said King leased said house and some of the land on said place to his son Junior K. King for the period of four years, and that said King was at times absent from said place, yet, if you shall further believe from the evidence that said King at the time he made said lease and at the times he left said premises intended to return to the same as his home, and that he had not in his own mind left said place with the intention of remaining away from the same permanently, then said place continued as his homestead, and you will find a verdict for the plaintiff.

"2. Although the jury may believe from the evidence that said Will R. King made a lease of the Peabody house and a part of the lands adjacent to the same to his son Junior K. King, for the term of four years, and that he went to Excelsior Springs, Chicago, California and St. Louis for his health, recreation, or business, but that said King intended at the times of leaving said premises and when he made said lease intended to be absent from said premises only temporarily and to return to the same as his home, then said King had not abandoned said homestead, and your verdict must be for the plaintiff.

"3. The court instructs the jury that the lease to the defendant, Junior K. King, of the lands in said lease described having expired on the first day of March, 1894, and before the

death of Will R. King, said Will R. King was, from that time up to the time of his death, entitled to the possession of said lands.

"4.    Although the jury may believe from the evidence that Will R. King went to the State of California for the purpose of establishing a domicile there for the purpose of instituting a suit for divorce against his wife, but that it was the intention of said Will R. King at the time he left Peabody and all the time to finally return to Peabody farm to live upon the same as his home, then the said King had not abandoned said Peabody as a homestead and your finding must be for the plaintiff.

"5.    If the jury find for the plaintiff, they will find that she is entitled to the possession of all the lands that were a part of the home farm of said Will R. King and by him managed and operated as one farm or plantation; and also assess her damages at such sum as they may believe from the evidence was the value of the rents and profits of the premises that the jury may determine the plaintiff is entitle to, from May 1, 1894, to this date; except that if you shall find plaintiff entitled to the southeast quarter of the northeast quarter of section 9, and the south half of the north half of section 10, in township 49, range 21, amounting to 200 acres, in estimating the damages on that land for the year 1895, you shall estimate such damages for that year at $2.50 per acre; and the jury will further find the monthly value of the rents and profits of such of the premises as the jury shall find the plaintiff entitled to the possession of.

"6.    The jury are instructed that there is no evidence in this case that Will R. King, Sr., acquired a domicile in the city of St. Louis."

The following instructions were given at the request of defendant:

"1.    The court instructs the jury, that in this case, the burden of the proof rests upon the plaintiff and it devolves

upon the plaintiff to prove by a preponderance of the evidence that at the time of the death of Will R. King, he resided upon the land described in the petition, and unless the jury find and believe from the evidence that the plaintiff has so proven then your verdict will be for the defendant.

"2.   The jury are instructed that the right of plaintiff to dower in her husband's land of which he died seized, is not denied or brought in question in this case, and that her dower rights can not be determined in this suit.

"3.   Notwithstanding the jury may believe from the evidence that Will R. King went to California for the purpose of instituting a suit for divorce against his wife, or that he went there for the purpose of improving his health, or that he went there for both of said purposes, yet if the jury believe from the evidence that he went there with the intention of making California his home, and with no fixed purpose of returning to Peabody and making that place his home, the verdict must be for the defendant.

"4.   The jury are instructed that Will R. King had the right to change his residence at any time independent of his wife's wishes in that regard; and if you believe from the evidence that the said Will R. King leased the premises, theretofore occupied by him as a home, and left said premises with the intention of not returning thereto to make it his residence, and you further find and believe that said Will R. King died while residing at another place, then your verdict must be for the defendant.

"5.   If the jury believe from the evidence that Will R. King abandoned the premises in dispute, as his residence, and removed from the same with the intention not to return and make said premises his residence, and was not residing thereon at the time of his death, then your verdict must be for the defendant, although you may further believe from the evidence that said Will R. King by such removal or abandonment intended to deprive his wife of any right of quarantine which

she would have had if he had continued to occupy the same.

"6.    The court tells the jury that the effect of the written lease read in evidence bearing date January 13, 1890, was to convey and let to June K. King all of the lands described therein and the exclusive use and control of the mansion house and all buildings, appurtenants to the same, situated thereon during the continuance of said lease, and if you believe from the evidence that said June K. King was in possession of said premises under said lease, then said Will R. King had no right to interfere with said June K. King's possession and exclusive control of said premises and although you may believe from the evidence that said Will R. King made frequent and repeated visits to his son and remained there as his guest for greater or less periods of time, such fact did not give the said Will R. King any right to occupy said mansion house as a residence.

"7.    The right of plaintiff to recover in this case depends upon the question as to whether or not the deceased Will R. King was occupying the mansion house on the premises sued for as his home at the time of his death.    If he was so occupying the same as his home, plaintiff should recover, but on the other hand, if he had left the same without the intention of returning and left defendant in the possession of the same, then the verdict must be for defendant notwithstanding the jury may believe from the evidence that. before his death he did form the intention of returning to and occupying said premises as his home, but was prevented by death from carrying out said last named intention.

"8.    If the jury believe from the evidence that deceased Will R. King, in the year 1893, left the State of Missouri and went to the State of California with the intention to change his domicile from the State of Missouri to the State of California, and that while in the State of California he determined to make that State his home and never again to reside in the State of Missouri, and that on account of sickness or for business reasons he returned to Missouri without the intention of

remaining but with the intention of returning to California and making that State his permanent home and that he was prevented by sickness from going back to California but died in Missouri, then the verdict must be for defendant notwithstanding you may further believe from the evidence that said Will R. King did not establish any residence or home while he was in California, and it makes no difference in this case how long he remained in California.

"9.   By the words 'preponderance of the evidence,' as used in the instructions given, is meant the greater weight of the credible testimony."

The trial resulted in a verdict and judgment in favor of plaintiff for the possession of the land sued for, and forty-seven hundred and twenty-five dollars damages.

After unsuccessful motion for a new trial defendant appeals.

On the trial defendant testified as a witness in his own behalf and it is claimed by him that the court erred in refusing to permit him to show by his evidence that plaintiff took her children to Marshall after leaving her husband, and remained there until after the decision of the divorce suit pending between her and her husband, that she then went with her whole family to Deer Lodge, Montana, established a residence there, and furnished the same, and lived in it with her children. The argument is that the proffered evidence was competent and should have been allowed to go to the jury, as tending to show that plaintiff was at the time of her husband's death a citizen of Montana, beyond the control of the process of this State, and that her husband's place of residence at the time of his death was not her residence, and she could not under the provisions of the section of the statute before referred to, "remain in and enjoy the mansion."

As was said by SHERWOOD, J., in passing upon the widow's quarantine rights in Gentry v. Gentry, 122 Mo. 202: "All such rights are bestowed by beneficent laws in order to afford

support and shelter to the widow and the orphan; are remedial in their nature and objects and therefore should receive a liberal construction—one commensurate with the objects intended and in harmony with the ends to be attained." Being governed by these principles, we do not feel that we would be justified in construing section 4533, *supra*, so that in order to entitle the widow to quarantine in the mansion house and land thereto attached of which her husband died in possession, she must be in the house at the time of his death, as the words "remain in" seem to imply, but to give the statute such a construction as will entitle her to quarantine in such property wherever she may be at that time, in the mansion house or elsewhere.

This seems to be the only logical conclusion to be drawn from the decisions of this court in Miller v. Talley, 48 Mo. 503, and Roberts v. Nelson, 86 Mo. 21, in which it is held that ejectment will lie in behalf of a widow for the dwelling house, messuage, etc., of which her husband died seized. The right of the plaintiff to the possession of the property in question does not in any way depend upon the place of her residence at the time of the death of her husband, but to entitle her to its possession it must have been his mansion house at that time.

It is also claimed that the evidence was competent as tending to show that plaintiff's husband had abandoned "Peabody" farm when taken in connection with the other facts shown in the case, and was explanatory of the facts and of his declaration concerning his change of residence from Missouri to California.

We are unable to appreciate the force of this contention, for how the place of residence of Mrs. King had any tendency to show that her husband had abandoned "Peabody" farm we are unable to perceive—nor was it explanatory of any facts, or declarations made by him concerning his change of residence

from this State to California.   The evidence was not therefore
competent for either purpose, and was properly excluded.

It is also urged that the court erred in permitting one Dr.
George F. Hulbert, a witness for plaintiff, to testify against
the objections of defendant as to impressions made upon his
mind from statements made to him by Will R. King while in
the city of St. Louis.   After reading the testimony of this
witness, we are not inclined to think that it is subject to this
contention.   He was asked and simply stated in reply what
was said to him by King, in regard to his home being at
Peabody.   There was nothing testified to by this witness, which
would justify a reversal of the judgment upon that ground.

The first and second instructions given upon the part of
plaintiff are criticised upon the ground that they in effect told
the jury that if Will R. King at the time he made the lease to
defendant, intended to be absent only temporarily and in-
tended at the time to return to Peabody farm as his home, he
had not abandoned said homestead and directed the jury upon
the finding of that fact alone to find a verdict for plaintiff.
While we think these instructions are subject to verbal criti-
cism for the reason stated by defendant, yet when considered
in connection with the facts disclosed by the record and the
other instructions in the case, as they should be, they are not
subject to serious objection.   While by these instructions the
intent of Will R. King to abandon Peabody as his homestead
is restricted to the times of the execution of the lease to his
son, and of his leaving Peabody to go to Excelsior Springs,
Chicago, California and St. Louis, and the jury were told if
he only intended to be absent from the premises temporarily
and to return to the same as his home, then he had not
abandoned said homestead, by defendant's eighth instruction
the jury were told that if he in the year 1893, left this State
and went to California with the intent to change his domicile
to that State, and that while in that State he determined to
make it his future home, and never again to reside in the

State of Missouri, and that if on account of sickness he returned to Missouri, but with the intention of returning to California and of making that State his future home, etc., then the verdict must be for defendant, thus giving defendant the benefit of his father having become a resident of California, or of any intention that he may have formed to become a resident of that State when he left this State to go there, and plaintiff's second instruction only in effect told the jury that although he may have gone to California with the purpose of making that his future home and to abandon Peabody, yet if he thereafter abandoned that idea and returned to Peabody, and again re-established his home there, they would find for plaintiff. There can be no doubt as to the correctness of this proposition. These instructions presented the theory upon which the case was tried, and when considered together presented that question very fairly to the jury.

Instructions are always to be considered in the light of the evidence and this showed that after plaintiff's husband went to California he returned to Peabody in August, 1893, and remained there for about six weeks, and then went to St. Louis, where he remained under medical treatment until his death in March, 1894. While at Peabody upon his return from California, and for the last time, he exercised the acts of citizenship in Saline county before mentioned, had repairs made upon his mansion house, and other buildings upon the farm.

Whatever may have been his intention in going to California, or the purpose that he may have formed while there in respect to changing his residence, and making his future home in that State, if he afterwards returned to Peabody as his home, and thereafter decided to go to St. Louis for medical treatment to be absent temporarily, and to thereafter return to Peabody as his home, there was no abandonment. Under the evidence we think plaintiff's instructions under comment, substantially correct, but in any event whatever imperfections there were in them, as to Will R. King's intention to abandon Peabody

King v. King.

and make California his home, or that he had in fact done so, were cured by defendant's eighth instruction which submitted that question squarely to the jury.

Plaintiff's third instruction is challenged upon the ground that it is a mere abstract proposition of law, having no proper place in the case, and its tendency was to mislead and confuse the jury. By this instruction the jury were told that the lease to the defendant of the lands in question having expired on the first day of March, 1894, Will R. King was from that time entitled to their possession.

This contention might have more of merit if it were not for the sixth instruction given at defendant's instance in which the jury were in substance told that the effect of this same lease was to convey to defendant the lands and house in question, and the exclusive use and control thereof, during its continuance, and that Will R. King had no right during the existence of said lease to occupy said mansion house as a residence. Conceding for the sake of the argument that the criticism upon plaintiff's instruction is just when the instruction is considered in connection with defendant's sixth instruction with regard to precisely the same matter, it is impossible to see how the jury could have been misled thereby, nor do we think that it was.

It is also claimed that plaintiff's fourth instruction is erroneous upon the ground of the improper use of the word domicile. But when this instruction is taken in connection with defendant's third, in regard to the same matter, the contention seems to be without merit. By plaintiff's fourth instruction, the jury were told if Will R. King went to California for the purpose of establishing a domicile there for the purpose of instituting a suit against his wife for divorce, but that it was his intention at the time he left Peabody, and all the time to finally return to Peabody to live upon the same as his home; while defendant's third instruction told them that if he went to California for the purpose of instituting a

suit for divorce, yet if he went there with the intention of mak-
ing California his home and with no fixed purpose of return-
ing to Peabody and making that place his home, the verdict
must be for defendant.    These instructions were both with
respect to the purpose of Will R. King in going to California,
one saying to make it his domicile to enable him to sue his wife
in the court of that State, for divorce, while the other said
to make it his home.    There is no substantial difference be-
tween the meaning of the two words home and domicile, and
even if the use of the word domicile was improper it would not
under the circumstances authorize a reversal of the judgment
on that ground, for clearly it was not prejudicial.

Plaintiff's sixth instruction is also assailed.    This instruc-
tion is claimed to be misleading, and confusing, and to be an
invasion of the province of the jury.    It simply told the jury
that there was no evidence in the case that Will R. King
acquired a domicile in the city of St. Louis and as it does not
appear from the record that there was any such evidence,
the instruction was neither misleading or confusing, nor an
invasion of the province of the jury.    This contention we
think untenable.

A further insistence is that the plaintiff's right to recover
in this case depends upon the occupancy of the mansion house
by her husband as a place of residence at the time of his death,
and McClurg v. Turner, 74 Mo. 45, is relied upon as sustaining
this contention; but the facts in that case were widely different
from the facts in the case at bar, hence, it is not an authority
in this.    In that case where the husband of the widow who
brought the suit, died in 1866, he was living upon another
farm with his family and had not lived upon the land in
question since 1862.    And when he died the land was in the
possession of another party who was claiming it adversely to
one Turner, and the possession of Mrs. Turner was under her
purchase from the party who was claiming it adversely to
Turner.    The facts in the two cases are by no means alike.

In the case at bar Will R. King, builded the house, and occupied it as his mansion for many years in connection with the land in suit, and the only question is whether he had abandoned the farm as his homestead at the time of his death.

The instructions taken as a whole presented the law of the case very fairly to the jury. But even if the instructions were erroneous the jury could not have found under the evidence any other verdict consistent therewith, and under such circumstances this court will not interfere as it is prohibited from doing so by statute, which provides that this court shall not reverse the judgment of any court unless it shall believe that error was committed by such court against the appellant, and materially affecting the merits of the action. [Revised Statutes 1889, sec. 2303; Fitzgerald v. Barker, 96 Mo. loc. cit. 666; Brobst v. Brock, 10 Wall. 519; Macfarland v. Heim, 127 Mo. 327; Comfort v. Ballingal, 134 Mo. 281; Burns v. City of Liberty, 131 Mo. 372; Henry v. Grand Avenue R'y Co., 113 Mo. 525.]

The judgment should be affirmed. It is so ordered. *Gantt, C. J., Sherwood, Robinson, Brace* and *Marshall, JJ.,* concur; *Valliant, J.,* dissents.