LILLIE J. WETZEL et al., Appellants, v. MOLLIE T. HECHT.

Division Two, March 26, 1920.

1. **WILL: Intention: Implied Life Estate.** In construing a will effect must be given to the intention of the testator and, if necessary to carry out that intention, an estate, such as a life estate, may arise by implication from the terms of the will.

2. ———: ———: **Life Estate or Homestead.** The will provided that "my homestead shall be left intact as long as my wife lives. ;After she leaves the homestead Lillie shall have this as a home, and at her death it shall go to Carrie; if both survive and neither occupy the property, said property may be sold and proceeds divided among the two." *Held*, that the will gave to testator's wife, not a homestead simply, to be terminated upon her subsequent marriage, but a life estate.

3. ———: ———: **Homestead During Life.** Where the will declares that "my homestead shall be left intact so long as my wife lives," the estate of the wife cannot be terminated by her subsequent marriage without ignoring the words "so 'long as she lives," and also the word "intact."

Wetzel v. Hecht.

4. ———: ———: **Homestead and Quarantine.** If it be contended that by the word "homestead" used in the will declaring "my homestead shall be left intact as long as my wife lives" the testator had in mind the statutory homestead given by Section 6708, Revised Statutes 1909, whereby the widow, there being no minor children, is vested with a homestead during her life or widowhood, it may as well be contended that he had in mind Section 366, which provides that a widow, until dower be assigned, may remain in and enjoy the mansion house.

5. ———: ———: **Quarantine and Assignment of Dower.** Under Section 366, Revised Statutes 1909, which provides that a widow may remain in and enjoy the mansion house until dower be assigned, her quarantine interest is not lost until dower is assigned, and by virtue of that interest she may maintain or defeat ejectment, or she may convey it and her grantee acquires the same right. And if the will declared "my homestead shall be left intact so long as my wife lives," her dower cannot be assigned during her life, and consequently her quarantine right must remain undisturbed as long as she lives, for otherwise the homestead could not remain "intact." By the words used the testator enlarged the estate which the statute gave his widow, and removed the contingency upon which it would terminate on her remarriage, and the result is a life estate by implication.

6. ———: ———: **Reconciling Inconsistencies: The Word Survive.** The will declared that "my homestead shall be left intact as long as my wife lives. After she leaves the homestead Lillie shall have this as a home, and at her death it shall go to Carrie; if both survive and neither occupy the property, said property may be sold and proceeds divided among the two." *Held*, first, that by the word "survive" he meant if the two daughters survive the lifetime of the widow; *second*, that by the words "after she leaves the homestead" he did not mean "if she leaves," but meant any contingency by which she separated herself from the control of the property, either by death, marriage or abandonment, but that neither marriage nor abandonment would divest her of her quarantine right, which could be done only by her death. Thus construed, the apparent inconsistencies are harmonized, and the result is a life estate to her.

Appeal from Morgan Circuit court.—*Hon. John G. Slate,*
Judge.


Affirmed.

*Capron, Butcher & Knoop* and *John J. Jones* for appellants.

(1) The controlling rule in construing wills, is to give effect to the intention of the testator as the same may be gathered from the instrument, if not violative of some established rule of law. Cox v. Jones, 229 Mo. 53. (2) The intention of the testator must be gathered from the will itself. Middleton v. Dudding, 183 S. W. 443. (3) The ordinary primary meaning is to be given the language of a will, unless other terms used in the will disclose that such meaning is repugnant to the testator's intention. Cox v. Jones, 229 Mo. 53; Mace v. Hollenbeak, 175 S. W. 876; Lich v. Lich, 158 Mo. App. 400. (4) While a testator may dispose of his property by a necessary implied devise, yet the presumption is very strong against his having intended any devise not set forth in his will. There must be a probability arising from the whole will so strong that the testator intended to make the devise that it cannot be supposed that any other intention existed in the mind of the testator. Page on Wills, sec. 468; Eneberg v. Carter, 98 Mo. 651; 30 Am. & Eng. Ency. (2 Ed.) 697; 1 Jarman on Wills (6 Ed.), p. 499.

*R. M. Livesay* and *A. T. Dumm* for respondent.

(1) The true intent and meaning of the testator is the cardinal principle in the construction of a will. And the court, construing the will, should place itself as nearly as may be in the position of the testator, so as to interpret his words in the light he intended they should have. Sec. 583, R. S. 1909; Gibson v. Gibson, 24 Mo. 227; Cross v. Hoch, 149 Mo. 325; Stewart v. Jones, 219 Mo. 614; Papin v. Piednoir, 205 Mo. 521; Tisdale v. Prather, 210 Mo. 407. (2) The testator by the will involved in this case intended to devise to his wife, the defendant here, a life estate in the premises in question, and the trial court properly so found. Burnet v. Burnet, 244 Mo. 491; Armor v. Frey, 226 Mo. 646; Roth v. Rauschenbusch,

173 Mo. 582; Walton v. Drumtra, 152 Mo. 489; Stewart v. Jones, 219 Mo. 614; Cross v. Hoch, 149 Mo. 325; 8 Words & Phrases, pp. 6826, 6827, et seq. (3) A life estate may be created, without using express words, by implication from a will, or by language of equivalent meaning. Burnet v. Burnet, 244 Mo. 498; Cross v. Hoch, 149 Mo. 343; Roth v. Rauschenbusch, 173 Mo. 591; Armor v. Frey, 226 Mo. 669. (4) The evidence in this case does not show an abandonment by the widow of the homestead in question; on the contrary, the evidence clearly and conclusively shows that she had not "left" the homestead. King v. King, 155 Mo. 406; Leake v. King, 85 Mo. 413; Holmes v. Nichols, 93 Mo. App. 515; Hines v. Nelson, 24 S. W. (Tex.) 541; 1 Words & Phrases, p. 8.

WHITE, C.—This suit, under Section 2535, Revised Statutes 1909, is to determine title to a tract of land in Versailles, Morgan County, Missouri. M. Joachimi, owner of the land, died in January, 1911, leaving a will. The construction of this will presents the issue between the parties. The defendant is the widow of M. Joachimi; the plaintiffs are his daughters by a former marriage.

Joachimi had four children at the time of his death; two daughters, Lillie, now Lillie Wetzel, and Carrie Walter, plaintiffs; and two sons, E. A. Joachimi and M. L. Joachimi, Jr. The will of M. Joachimi, executed in May, 1910, after giving a nominal sum to each of his two sons, E. A. Joachimi and M. L. Joachimi, Jr., disposes of the balance of the property in this clause:

"To my daughter, Carrie Walter, and to Lillie Joachimi, and my dear wife, Mollie G. Joachimi, shall share alike in money and property left, after my debts are paid, except my homestead in Spurlock's Addition, shall be left intact as long as my wife lives. After she leaves the homestead Lillie shall have this as a home, and at her death it shall go to Carrie Walter; if both survive and neither occupy the property, said property may be sold and proceeds divided among the two, and in case of

Carrie Walter's death before Lillie Joachimi's death, said property shall go to Lillie Joachimi or her heirs."

This suit involves the property mentioned as the homestead in Spurlock Addition. After her husband's death in 1911 Mrs. Joachimi continued to live on the place until March, 1916, when she went to live with her daughter by a former marriage, at Tipton, Missouri. While there she married one Hecht in June, 1917, and had been living with him as his wife from that time up to the time of the trial in December, 1917. While she lived at Tipton, and up to the time of the trial, the defendant continued in possession of the property; that is, she placed someone in charge who paid a small rent, and she retained charge of two rooms and kept a large part of her furniture in the house. She visited it occasionally from time to time during the two years she was absent, before and after her marriage, and sometimes stayed all night there. She paid the taxes for 1916, and some prior years. She made repairs, papered, painted and put in sidewalks at different periods during the year 1917, both before and after her marriage to Hecht. She paid all the taxes that were paid on the property after her husband's death. She swore that neither of the plaintiffs had ever paid any taxes or made any repairs on the place; that no one lived with her, but that she lived alone on the homestead after her husband's death until she went to live with her daughter in Tipton. She said she had no intention of going away from this home permanently; that she always looked upon it as her home, and treated it as a home. The trial court held that under the provision of the will set out the defendant had a life estate in the property and rendered judgment in her favor. The plaintiffs appealed.

I. The rule of construction invoked by counsel for both parties is well established in this State—that in construing a will effect must be given to the intention of the testator and, if necessary to carry out that intention, an estate, such as a life estate,

*Implication.*

may arise by implication from the terms of the will. [Burnet v. Burnet, 244 Mo. 491, 1. c. 498; Walton v. Drumtra, 152 Mo. 489, 1. c. 507; Armor v. Frey, 226 Mo. 646, 1. c. 669.] To say that a life estate may be vested by implication is but another way of saying that the will must be construed from its four corners, the intention of the testator gathered from the entire instrument and carried into effect whether apt operative terms are used or not. The will, it is stated, was written by the testator himself, without the advice of an attorney, and the lack of aptness in the use of words is due to that fact.

II. It is argued by appellant that the testator, in using the word "homestead" in the will, had in mind the statutory homestead, provided by Section 6708, Revised Statutes 1909, whereby the widow, there being no minor children, is vested with an estate in the homestead during her life or widowhood. It is contended, therefore, that her rights ceased to exist by virtue of the statute when she remarried, and that no expression in the will prevented that result. If the testator had the law in mind it might as well be said he had in mind Section 366, Revised Statutes 1909, which provides that a widow, until dower be assigned, may remain in and enjoy the mansion house. Every one is presumed to know the law, and in writing a will a testator must be presumed to write it with understanding as to how the law would affect his estate in absence of any modification of that effect by the will. Under Section 366 the widow's quarantine interest is not lost until dower is assigned and by virtue of that interest she may maintain ejectment or defeat ejectment. She may convey it and her grantee acquires the same right. [Phillips v. Presson, 172 Mo. 24, 1. c. 27; Thomas v. Black, 113 Mo. 66, 1. c. 70; King v. King, 155 Mo. 406; Brown v. Moore, 74 Mo. 633; Smith v. Stephens, 164 Mo. 1. c. 422; Coulson v. La Plant, 196 S. W. 1144, 1. c. 1147.] The case last cited, opinion by Judge GRAVES, reaffirms the doctrine in the earlier cases construing that section. The right of the defendant under Section 366, therefore, would defeat recovery in this

case, and would dispose of the case without further consideration but that the trial court in rendering judgment determined the widow was entitled to a life estate.

III. In order to determine the propriety of that judgment the paragraph of the will quoted must be considered and construed. The first provision that challenges attention is the statement: "My homestead in Spurlock Addition shall be left *intact* as long as my wife lives."

It is argued by appellant that by the word "intact" it is meant there should be no sale or partition of the property while the wife lives. By the same token, if it is to remain intact, whatever interest the wife had in it must remain the same as long as she lives. We couldn't give effect to what evidently was in the testator's mind if her interest might be extinguished or abridged during the time of her life. If *no* change in interest could take place, then her dower could not be assigned and consequently her quarantine right must remain undisturbed as long as she lives.

If the testator had the statute relating to homesteads in mind, evidently it was his purpose to extend her right beyond the period of any marriage and until her death; that is, he enlarged the estate which the statute gave her and removed the contingency by which it would terminate on her marriage. Further, if he had in mind the quarantine section (366) then he intended to forbid an action to assign dower during her life. This conclusion results, on the theory of the appellant, as to the testator's intention in using the word "intact."

What is meant by vesting a life estate by implication is that the intention of the testator when carried out has the effect to give one the enjoyment of property for life. Here, if the effect of the will is to prohibit an assignment of dower and thus to give the widow the full possession and enjoyment of the premises under her quarantine right as long as she lived—a right which she might convey and could not forfeit—the result is a life estate. There seems no escape from that conclusion. .

That result is reenforced by the last sentence in that paragraph of the will. In speaking of his two daughters the testator adds:

"If neither occupy the property, and if both survive, said property may be sold and proceeds divided between two."

By this he means the homestead need not remain "intact" if the two daughters survive. Survive what? Obviously the period during which the property is to remain intact, the lifetime of the widow.

This construction would be quite easy but for the apparent contradiction in the sentence sandwiched between the two mentioned, as follows: "After she (the widow) leaves the homestead, Lillie shall have this as a home and after her death it shall go to Carrie Walter."

It is necessary to harmonize that with the rest, if possible, so as to give effect to the whole. It is significant that the testator did not say *if* she leaves, but he said "*after*" she leaves. It was not a contingency but a certainty which he was providing for. There could be no certainty that she would abandon the property; there was certainty that she would die. It might be possible to say the testator had in mind any contingency by which she separated herself from the control of the property, either by death, marriage or abandonment. Either of these contingencies would be, in a sense, *leaving the property*. However, neither marriage nor abandonment would divest her of her quarantine right, to the full and complete enjoyment of the premises. That could only be accomplished by her death.

To recapitulate: the intention of the testator, as expressed in rather clear terms when he said the property was to be "intact" during the life of his wife, was to prohibit any change in that *status* of the property so far as her interest in it was concerned. All her rights, given to her by law, were to remain as long as she lived, and good against any assaults upon same either by suit for partition, assignment of dower, or any other proceeding which would affect the present state of title. Under that

provision of the will and the quarantine statute she acquired in effect a life estate.

This would harmonize the apparent inconsistencies in the paragraph of the will quoted.

The judgment is affirmed. *Railey* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.